IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DEBBIE MARIE TURNER,
　　　Plaintiff,

vs.　　　　　　　　　　　　　　　　Case No.: 3:15cv498/EMT

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]
　　　Defendant.
_____/

## **MEMORANDUM DECISION AND ORDER**

This case has been referred to the undersigned magistrate judge for disposition

pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the

parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 10, 11).  It is now

before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"),

for review of a final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying Plaintiff's application for disability

insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

_____

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017.  Pursuant to Fed. R. Civ. P. 25(d), she is therefore automatically substituted for Carolyn W. Colvin as the Defendant in this case.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## I.    PROCEDURAL HISTORY

On August 14, 2013, Plaintiff filed an application for DIB, and in the application she alleged disability beginning February 22, 2013, but later amended the alleged onset date to January 22, 2013 (tr. 24).[2]  Her application was denied initially and on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ").  A hearing was held on May 29, 2015, and on June 8, 2015, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 24–37).  The Appeals Council subsequently denied Plaintiff's request for review.  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

---

[2] All references to "tr." refer to the transcript of Social Security Administration record filed on January 26, 2016 (ECF No. 13).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

Case No.: 3:15cv498/EMT

## II.    FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see*

tr. 24–37):

(a)    Plaintiff meets the insured status requirements of the Act through September 30, 2018[3];

(b)    Plaintiff had not engaged in substantial gainful activity since January 22, 2013, the amended onset date;

(c)    Plaintiff had the following severe impairments: lumbar degenerative disc disease, status post discectomy and laminectomy; lumbar spondylolisthesis; cervical spondylosis; cervical degenerative disc disease; headaches; mild carpal tunnel syndrome; diabetes mellitus; intrinsic asthma; hypertension; and obesity;

(d)    Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, subpart P, Appendix 1;

(e)    Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she could occasionally use her hands to push and pull arm controls and frequently use her hands to simple grasp and fine manipulate.  She could occasionally use her feet to push and pull leg controls.  She could never climb ladders, ropes, or scaffolds and could occasionally stoop, crouch, kneel, crawl, climb stairs and ramps, balance, and reach overhead.  She could never drive automotive equipment requiring use of a clutch and could occasionally work around unprotected heights, moving machinery, and marked changes in temperature and humidity.  She experienced a moderate degree of pain, which occasionally interfered with concentration, persistence, or pace but did not require her to abandon her work or workstation.  This was not a continuous concept and occurred intermittently.

---

[3]  Thus, the time frame relevant to Plaintiff's claim for DIB is January 22, 2013 (date of alleged onset) through June 8, 2015 (date of the ALJ's decision), even though Plaintiff is insured for DIB through September 2018.

Case No.: 3:15cv498/EMT

(f)     Plaintiff was capable of performing her past relevant work as a retail cashier/stocker as generally performed in the national economy and defined in the Dictionary of Occupational Titles but not as performed by Plaintiff.  This work did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

(g)     Plaintiff had not been under a disability, as defined in the Act, from January 22, 2013, through June 8, 2015, the date of the ALJ's decision.

## III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g);

<u>Falge v. Apfel</u>, 150 F.3d 1320, 1322 (11th Cir. 1998); <u>Lewis</u>, 125 F.3d at 1439; <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); <u>Lewis</u>, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).  Pursuant to 20 C.F.R.

§ 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.     If the claimant is performing substantial gainful activity, she is not disabled.

2.     If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.     If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.     Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's

impairments, the claimant can perform.  <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052

(11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then

prove she cannot perform the work suggested by the Commissioner.  <u>Hale v. Bowen</u>,

831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S MEDICAL, PERSONAL, AND EMPLOYMENT HISTORY[4]

A.    Relevant Medical History

As is relevant here,[5] medical evidence dated prior to Plaintiff's alleged onset

date shows that she was treated for her headaches as early as October of 2011.

Plaintiff was seen by Robert Knox, PA-C, and Tamara Nibison, PA-C, where she was

treated with Immitrix for migraines with reported symptoms of nausea, fatigue, and

photophobia (Tr. 298–315).  Plaintiff saw these physician assistants a few times until

January of 2013.[6]  It was noted during this time that Plaintiff was employed as a clerk

at Walmart (tr. 314).

---

[4] Unless otherwise noted, the information in this section is derived from the ALJ's opinion (*see* tr. 24–37).

[5] Because Plaintiff's sole argument pertaining to the ALJ's findings on the medical evidence per se relates to her headaches, the court focuses only on that aspect of the medical record.

[6] As Defendant has also pointed out, these medical visits predate Plaintiff's alleged onset date.

On August 1, 2013, Plaintiff was treated by a neurologist Judy L. White, MD, for headaches, neck pain, and low back pain (tr. 339).  Dr. White noted that "[t]he patient remains on Neurontin at 400 mg p.o. tid. and reports that her headaches have been at least 75% better" (tr. 339).  Plaintiff's migraine headaches were identified as being "worse with activity" (tr. 340).  Dr. White noted Plaintiff to have a normal orientation to person, place and time; to be able to communicate normally; to have normal memory, attention, and concentration; and to have a normal "fund of knowledge" (tr. 342).  Dr. White also noted that Plaintiff walked with a normal gait and could stand without difficulty (tr. 343).   Dr. White continued Plaintiff's Neurontin, increasing her nighttime dosage to 500 mg, and continued her on methocarbamol (*id*.).  Dr. White also saw Plaintiff five months later on January 16, 2014.  Because Plaintiff reported that she still had headaches, Dr. White increased her dosage of Neurontin from 400 to 500 mg (tr. 366, 370).  There was no change in Dr. White's findings as to Plaintiff's concentration, memory, attention, gait, or ability to stand (tr. 369–70).

On a consultative examination with Dr. Galina Kats-Kagan, on April 26, 2014 (tr. 359), among Plaintiff's complaints were her migraine headaches, which apparently were occurring during the examination:  "Chief Complaints: . . . headaches migraines (1st migraine headache strarted [sic] childhood, last migraine headache was *now*, constant headache, Aura with  nausea . . .)." (tr. 359) (emphasis supplied).

Nevertheless, upon physical examination Dr. Kats-Kagan noted Plaintiff to be pleasant and in "no visible distress" and to have arrived at the appointment without difficulty (tr. 360). Dr. Kats-Kagan's neuropsychological examination yielded normal results, and Plaintiff was able to perform musculoskeletal and movement exercises without difficulty and with normal results, save for issues with her back injuries during certain movements (tr. 360–61).

On April 10, 2015, Plaintiff sought treatment from Dr. E. Jacob, MD, MRCP, to whom she reported that her headaches occurred daily and were "a pressure type of headache which varie[d] into a stabbing headache and a throbbing headache" (tr. 404). Plaintiff also identified persistent nausea with occasional vomiting, no vertigo but loss of balance, tinnitus, photophobia, and aversion to sound during her severe headaches (*id.*). According to Plaintiff, she had tried several medications to that point, but none of them had effectively relieved her headaches (*id.*). Dr. Jacob's medical impression was "headaches with migraine features." As Plaintiff also had neck pain and lower back pain after having lumbar surgery, Dr. Jacob referred her to pain management (tr. 406).

B.    Personal History

At Plaintiff's hearing, held May 29, 2015, she testified that she previously worked as a retail cashier and childcare attendant (tr. 53–57), but she claimed that, as

of January 22, 2013, she could not work primarily due to back and neck problems, but also due to diabetes, nausea, and asthma (tr. 57, 220).  Plaintiff also testified that she sometimes gets headaches that "feel[] like something just shooting through [her] head," and they are sometimes so bad that she has to lie down (tr. 59–61).  Plaintiff provided that sometimes her pain would "just hit [her] when [she is] not doing anything" (tr. 61).   Though Plaintiff described her pain as quite serious and an everyday occurrence, her testimony was vague as to whether she was speaking of the pain she experiences in her shoulders, neck, back, or in her head (tr. 61–63).  Plaintiff stated that the medications she takes for her pain ease, but do not relieve, her pain (tr. 63).  The medications make her tired and sleepy (tr. 63).

C.    Other Testimony

Ron Maine, a vocational expert ("VE"), testified at Plaintiff's hearing.  He testified that, through information provided by the Occupational Employment Quarterly, the Specific Occupational Selector Manual, and the Occupational Outlook Handbook, he was familiar with jobs in Florida (tr. 83–84).  In summary, the VE categorized Plaintiff's past work as that of a Retail Cashier/Stocker and a Child Care Attendant under the Dictionary of Occupational Titles ("DOT"), and he provided that a hypothetical person with Plaintiff's RFC could  perform her past relevant work as a Retail Cashier/Stocker (tr. 82–84).  As for other work in the regional or national

economy, the VE testified that the same hypothetical person could perform work as an Office Clerk Assistant, a Mail Sorter, and a Ticket Clerk (tr. 85–86).

V.     DISCUSSION[7]

Plaintiff contends the ALJ erred in by first determining that her headaches were "severe" as defined under the Act but then failing to account for them in his RFC finding.[8]

An ALJ's RFC assessment is to be based upon all relevant evidence of a claimant's ability to do work despite her impairments.  Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).  However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quotations omitted).  Thus,

---

[7]  For its own organizational purposes, the court addresses Plaintiff's claims in a different order than how they were presented.

[8]  In the heading for her claim, Plaintiff also identifies her asthma in conjunction with the headaches, but her asthma is not otherwise even mentioned in the brief.  The court itself notes from the record that Plaintiff's asthma is mentioned largely as a chronic condition but one that is controlled or managed, with her breathing consistently noted to be clear. *See, e.g.*, tr. 32, 376, 385, 393, 395, 405.  Accordingly, the court does not address Plaintiff's asthma any further.

the ALJ should analyze all the evidence and sufficiently address the "obviously probative exhibits" in order for the court to conclude that his decision is rationally supported by substantial evidence.  <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981).

In this case, the ALJ cited extensively to the medical record, specifically referencing Plaintiff's headache or migraine complaints and medical assessments throughout (tr. 28–33).  As reflected in the court's summary of the record above, Plaintiff's headache symptoms did not appear to significantly impact her physical abilities, nor her mental orientation, concentration, and ability to communicate.  As part of her overall pain symptomatology, which included not only her headaches but also her back and neck pain, the ALJ stated:

> She experiences a moderate degree of  pain, which occasionally interferes with  concentration, persistence, or pace but does not require her to abandon her work or workstation.  This is not a continuous concept and occurs intermittently.

(tr. 27).

In her brief, Plaintiff's citations to the medical record are little different from the ALJ's own citations.  The fundamental difference is simply this: where Plaintiff naturally implies full credibility in her own subjective reporting of her headache symptoms, the ALJ found her testimony concerning the intensity, persistence, and

limiting effects of her symptoms to be "not entirely credible" in light of the record (tr. 28).   The court finds that the ALJ's credibility assessment was supported by substantial evidence in the record as it pertains to Plaintiff's headache symptoms. Stated differently, Plaintiff produced no "obviously probative exhibits" that would cast material doubt upon whether the ALJ's findings were rationally supported by substantial evidence.  *See* Cowart , *supra*.  Her claim is therefore unavailing.

Next, Plaintiff claims that the ALJ erred by failing to investigate a conflict between the VE's testimony and the DOT, as required by Social Security Ruling ("SSR") 00-4p.  The VE testified that Plaintiff could perform her past job as a cashier, which is found at DOT 290.477-014, Retail Cashier/Stocker (tr. 82–83, 85).   As Plaintiff contends, according to the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), a companion publication to the DOT, the job identified by the VE requires frequent reaching.  SCO at 366 and at App. C at C-3, http://www.nosscr.org/sco/sco.pdf.   As defined in the SCO, "Reaching" means "[e]xtending hand(s) and arm(s) in any direction." *Id.* at App. C-3. Plaintiff thus argues that, because the ALJ's RFC assessment provided that Plaintiff could only *occasionally* reach overhead (Tr. 27), the job's requirement of *frequent* reaching rendered it beyond her capacity to perform.  Plaintiff further contends that

the ALJ failed to ask the VE if there was any conflict between his opinions and the

DOT.

The court notes that, when the ALJ elicited the VE's testimony regarding

Plaintiff's past work, the VE replied with reference to the DOT:

> Q:    All right, Mr. Maine, could you please identify the work
> performed by the claimant for the last 15 years indicating
> the title of the job, the (inaudible) available and the skill
> and exertional level?

> A:    Retail Cashier/Stocker.  This will cover most all of the
> retail jobs.   DOT 290.477–014.   Semiskilled, SVP 3.
> Exertional level light per DOT, but it looks like medium as
> performed.

(tr. 82–83).

When the ALJ later posed a hypothetical question based on Plaintiff's RFC and

whether Plaintiff could perform her past work, the VE again replied with reference to

the DOT:

> Q:    All right, considering the exertional and non-exertional
> limitations . . . do you have an opinion whether such an
> individual could perform  any of the past relevant work you
> identified?

> A:    The Cashier job, per DOT, but not as performed.

(tr. 85).

Although the ALJ did not specifically ask about any conflict, the court finds the VE's testimony to affirmatively indicate there was no conflict between his testimony and the DOT.  The VE essentially opined that, while the demands of at least one of Plaintiff's previous cashier jobs "as performed" may have exceeded her capacity because they were at the medium exertional level, she could nevertheless perform her past relevant work as per the requirements at the light exertional level listed in the DOT.  That being the VE's stated opinion, there was no conflict between the VE's testimony and the DOT that would have been apparent to the ALJ, and indeed the ALJ's findings reflected the VE's assessment.  *See supra*, Findings of the ALJ, Finding (f).  Further, Plaintiff raised no challenge or objection to the VE's testimony. Therefore, the court finds there was no apparent conflict for the ALJ to resolve concerning Plaintiff's past work, and thus there was no error.  *See* Sommers v. Colvin, No. 5:14-cv-163/EMT, 2015 WL 4633516, at *13 (N.D. Fla. Aug. 3, 2015) (finding no apparent conflict where the VE stated that his testimony was consistent with the DOT and Plaintiff's counsel raised no challenge); Gibson v. Astrue, No. 1:09-CV-677-AJB, 2010 WL 3655857, at *15 (N.D. Ga. Sept. 13, 2010) (indicating that when there is no apparent conflict between the VE's testimony and the DOT, the ALJ is not required to inquire further); Brijbag v. Astrue, No. 8:06-CV-2356-T-MAP, 2008 WL

276038, at *2 (M.D. Fla. Jan. 31, 2008) (holding that the ALJ need not independently corroborate the VE's testimony when no apparent conflict with the DOT exists and the VE's testimony goes unchallenged) (collecting cases).

As Defendant also asserts, while the DOT job listing in question referred to reaching ability in all directions, Plaintiff's RFC specified only overhead reaching, and therefore no real conflict is evident.  As provided in SSR 00-4p:

> Reasonable explanations for such conflicts, which may provide a basis for relying on the evidence from the VE or VS, rather than the DOT information, include, but are not limited to the following:
>
> . . .
>
> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings.  A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

SSR 00-4P (S.S.A.), 2000 WL 1898704, at *3.  In this case, the RFC identified a more particular type of reaching—overhead—and the VE formed his opinion based on this more specific information, and he considered not the maximum requirements of the occupational listing—that is, frequent reaching—but a lesser quantum in the occasional reaching.  Thus, because the VE's testimony comports with SSR 00-4p in that the VE "provide[d] more specific information about jobs or occupations than the

DOT," this further shows a lack of apparent conflict between the VE's testimony and the DOT.

Most importantly, even if a conflict were found, the Eleventh Circuit has held that the VE's testimony "trumps" the DOT, and therefore an ALJ may rely solely on the testimony of the VE.  Jones v. Apfel, 190 F.3d 1224, 1229–30 (11th Cir. 1999). In so holding, the Eleventh Circuit recognized that the DOT is not the sole resource of job information.  Further:

> The DOT itself states that it is not comprehensive.  It provides occupational information on jobs in the national economy, and it instructs "DOT users demanding specific job requirements [to] supplement th[e] data with local information detailing jobs within their community." Dictionary of Occupational Titles, Special Notice at xiii (4th ed.1991); Barker [v. Shalala], 40 F.3d [789,] 795 [(6th Cir. 1994)]. Additionally, the Code of Federal Regulations states that the SSA will take administrative notice of reliable job information available from various governmental and other publications, such as the DOT.  *See* 20 C.F.R.  §  404.1566(d)(1). By this wording, the SSA itself does not consider the DOT dispositive.

*Id.* at 1230.

By contrast, a VE is "an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." and can provide vital local information detailing jobs in the regional community.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004); Jones, 190 F.3d at 1230.  The holding that the VE's testimony

trumps the DOT has been consistently upheld.  *See*  Leigh v. Comm'r of Social Sec., 496 F. App'x 973, 974–75 (11th Cir. 2012) (citing Jones and holding that a "[i]f there is conflict between the DOT and the jobs identified by a VE in response to the hypothetical question, the testimony of the vocational expert 'trumps' the DOT"); Hurtado v. Comm'r of Soc. Sec., 425 F. App'x 793, 796 (11th Cir. 2011) (stating "[e]ven assuming that an inconsistency existed between the VE's testimony and the DOT, the ALJ did not err by relying on the VE's testimony because it "trump[ed]" any inconsistent provisions of the DOT") (citing Jones, 190 F.3d at 1229–30); Jones v. Comm'r of Soc. Sec., 423 F. App'x 936, 939 & n.4 (11th Cir. 2011) ("Social Security Rulings are not binding on this court.  To the extent SSR 00–4p conflicts with Jones [v. Apfel, 190 F.3d at 1229–30], we are bound by Jones." (internal citations omitted)); Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 662 (11th Cir. 2007) ("Our precedent establishes that the testimony of a [VE] 'trumps' an inconsistent provision of the DOT in this Circuit.").  *See also, e.g.*, Riddle v. Colvin, No. 1:12–cv–787–WC, 2013 WL 6772419 (M.D. Ala. Dec. 20, 2013) (concluding that plaintiff had failed to establish a conflict between the VE's testimony and the DOT, that the ALJ was only required to resolve "apparent" inconsistencies and no "apparent" conflict existed, and that—even if an actual conflict existed— under binding Eleventh Circuit law the VE's testimony trumps any inconsistent provisions in the DOT).

For the foregoing reasons, the court finds no reversible error in the ALJ's reliance on testimony of the VE, his lack of questioning regarding any conflicts with the DOT, and his finding that Plaintiff could perform her past work as a cashier clerk.

VI.    CONCLUSION

In sum, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560.  Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is **ORDERED:**

1.      Nancy A. Berryhill is substituted for Carolyn W. Colvin as Defendant in this action.

2.      The decision of the Commissioner is **AFFIRMED**, this action is **DISMISSED,** and the clerk is directed to close the file.

At Pensacola, Florida this 30th day of March 2017.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**